IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
SUBMITTED ON BRIEFS JULY 14, 2005

IN THE MATTER OF: J.L.C., V.R.C. and E.R.C.
JOHN RICHARD SIMMONS, ET AL. v. JAMES CORDELL, ET AL.

Direct Appeal from the Chancery Court for Grundy County
No. A-111     Jeffrey F. Stewart, Chancellor

_____

No. M2004-00538-COA-R3-CV - Filed December 28, 2005
_____

This is a child support case. Custody of the minor children was removed from the biological father, and he was convicted of and incarcerated for aggravated sexual battery of his child and the manufacture of methamphetamine. The custodians of the children petitioned to terminate the father's parental rights, adopt the children, and obtain back child support from the father. The father owned 1500 acres of farmland. The trial court terminated the father's parental rights, assessed back child support against him, found him voluntarily underemployed and, based on the income-producing farmland, imputed an earning potential of $45,000. The custodians appeal, arguing that the trial court erred by not imputing a higher earning capacity to the biological father. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which DAVID R. FARMER, J. joined, and ALAN E. HIGHERS, J., dissented.

Connie Reguli, Brentwood, TN, for Petitioner/Appellants, John Richard Simmons and Kimberly Dawn Simmons

R. Dee Hobbs, Chattanooga, TN, for Respondent/Appellee James L. Cordell

Respondent Vicki R. Cordell ("Mother") and Respondent/Appellant James L. Cordell ("Father") were married in 1992 and had five children, three of whom are the subject of this appeal.[2] The family lived on approximately 1500 acres of farmland in Grundy County that Father inherited from his parents. They lived in the large home occupied by Father's parents before they died. Father had farmed the land and raised livestock and cut timber for some thirty years. At the time of the hearing in this cause, Father was a little over fifty years old, and the three children were ages 10, 9 and 5 years old.

In 1998, the three children were removed from the custody of Mother and Father and taken into protective custody by the State of Tennessee Department of Children's Services ("DCS"). On February 18, 1999, the Juvenile Court of Grundy County entered an order finding the children to be dependent and neglected. Physical custody of the children was awarded to Petitioner/Appellants John Richard Simmons and Kimberly Dawn Simmons ("the Simmons"). John Simmons was a cousin of Father. The Simmons lived on a farm near the Cordells' farm.

In March 1999, Father pled guilty to a Class A felony, aggravated sexual battery of a child, for the rape of one of his children, not the subject of this appeal. For this offense, he was sentenced to a ten-year prison term. Subsequently, both Mother and Father pled guilty to the manufacture of methamphetamine. Mother was sentenced to a six-year prison term, and Father received an additional prison term to be served consecutively with his sentence for aggravated sexual battery.

On June 1, 2001, the Simmons filed a petition in the Chancery Court of Grundy County seeking to terminate the parental rights of both Mother and Father and to adopt the three children. They subsequently amended their petition to include a request for child support from Father, retroactive to the date on which they received custody of the children, in January 1999. Mother's child support obligation was previously adjudicated in Juvenile Court and is not the subject of this appeal.

At the trial on January 8, 2004, neither Mother nor Father contested either the termination of their parental rights or the adoption of the children by the Simmons. Since Mother's child support obligation had previously been established, that was not an issue at trial. Father conceded that he had some obligation of child support, and the trial proceeded on the single issue of establishing the amount of Father's child support obligation from January 1999 to the date of the termination of his parental rights.

---

[1]This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]Two of the children of Mother and Father were out of their custody and adopted by relatives as of the date of the hearing in this cause. One of those children was the subject of Father's Class A felony conviction.

At trial, it was undisputed that approximately 500 acres of Father's land was farmland, 500 acres was pasture, and 500 acres was timber. In connection with Father's guilty plea on the methamphetamine charge, 300 acres of his land was forfeited to the federal government. Apparently the land was being rented for a nominal sum, approximately equal of the taxes due. The Simmons presented testimony from several witnesses on Father's farming operations prior to his incarceration and the gross income that could be obtained from farming the land, raising livestock, permitting timber to be cut, and rental income. The witnesses testified that the potential income to be derived from the land was approximately $234,000. Many of Father's financial records were destroyed in a fire in 1999 that burned down the family home on the farm. The only evidence of Father's income prior to his incarceration were his 1998 and 1999 federal tax returns, showing an adjusted gross income of $26,591.00 and $30,026.00, respectively.

The trial court rendered an oral ruling at the conclusion of the trial, and a written order was entered on February 17, 2004. The parental rights of both Mother and Father were terminated on multiple grounds, and the Simmons were permitted to adopt the children. In the February 17, 2004 order, the trial court stated:

> . . .[E]vidence was put before this Court regarding the potential income available to [Father], in spite of his incarceration.
>
> * * *
>
> [Father] is the owner of land that has income potential from agriculture including the harvesting of hay, the raising of cattle and the raising of chickens. The testimony of witnesses shows that the potential gross (less reasonable expenses) income from hay on 500 acres is $58,500 per year and on 400 acres is $42,600 per year. Testimony also shows that 500 acres of pasture could produce a gross income (less reasonable expenses) of $145,000 per year. Testimony also show that three chicken houses would produce gross income (less reasonable expenses) of $30,000. [Father's] income tax return shows a gross income of $30,026. There are no tax records available showing the income produced when the farm was in full production.
>
> The Court also finds that [Mother and Father] willfully engaged in criminal conduct that has caused them to be incarcerated.
>
> * * *
>
> It is therefore ordered, adjudged and decreed that [Father] is voluntarily underemployed and [the Simmons] are entitled to a judgment for child support due to them from January 1999 until the date of this hearing. It is ordered that [Father] has an earning potential of $45,000 per year. Child support for three children on this gross income is $1,193 . . . per month. The accumulated arrearage on this monthly obligation is $71,580. . . .

The Simmons were then awarded a judgment for the child support arrearage in the amount of $71,580. From this order, the Simmons now appeal.[3]

On appeal, the Simmons argue that the trial court erred in finding Father's earning capacity to be only $45,000. Despite his incarceration, they contend, the evidence supports a finding that he could produce income from his farmland well in excess of that amount, and they ask this Court to impute to Father an earning potential of at least $117,000.

On appeal, Father stipulated that there is cause for terminating his parental rights. In his appellate brief, he states: ". . . [W]hile [Father] disagrees with the lower court's conclusion that he was 'voluntarily underemployed' as a result of being incarcerated, this finding is not challenged by him on appeal." He characterizes the evidence offered by the Simmons as "remote" and "speculative," and states:

> Rather than rely on conjecture, the trial court considered the actual income earned by [Father]. Then, having found that he was voluntarily unemployed, the lower court imputes a fifty-percent increase to the actual income of [Father] in order to reach a supposed income level of $45,000 per year. This conclusion is supported by both the record and the law.
>
> * * *
>
> The trial court . . . focused . . . on the evidence of income actually earned . . . [and] correctly found that the farm could have been earning more income, and the court's imputation of an additional fifty percent of income to [Father] is entirely reasonable on this record and should not be overturned.

Father, therefore, expressly waives all issues that he could raise on appeal, including issues related to the termination of his parental rights and the finding of voluntary underemployment. He contends that any increase in the level of earning potential attributed to him would be based on speculative evidence, and asks this Court on appeal to "sustain the decision below and dismiss the appeal."

On appeal, the trial court's findings of fact are accorded a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed *de novo*, with no presumption of correctness. **In re C.K.G.**, 173 S.W.3d 714, 721 (Tenn. 2005).

From our review of the record, we must agree with Father that the evidence in this record is insufficient to support an increase in the earning capacity imputed to him from the farmland he holds. No doubt his farmland can be utilized to generate support for his children, despite his incarceration, but the evidence does not support the increase sought by the Simmons on appeal. Therefore, we must hold in favor of Father and affirm the trial court's award to the Simmons of a judgment in the amount of $71,580.00.

---

[3]There are no issues on appeal relating to Mother.

-4-

The decision of the trial court is affirmed. Costs on appeal are awarded against the Petitioner/Appellants John Richard Simmons and Kimberly Dawn Simmons, and their surety, for which execution may issue, if necessary.

                        _____

HOLLY M. KIRBY, JUDGE